A02A1298. CLEMONS v. THE STATE.
(574 SE2d 535)

BLACKBURN, Chief Judge.

Following a jury trial, Kelvin Clemons appeals his conviction for one count each of trafficking in cocaine, trafficking in methamphetamine, possession of cocaine, and possession of methamphetamine. Clemons contends that the trial court erred by: (1) denying his motion to suppress; (2) reinstating two jurors struck by defense counsel; (3) admitting evidence from a civil forfeiture proceeding; and (4) admitting evidence from a co-defendant's videotaped police interview. For the reasons set forth below, we affirm.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Clemons] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The ver-

---

[6] *Weldy v. State*, 239 Ga. App. 849, 850 (2) (521 SE2d 858) (1999); *Wallace v. Swift Spinning Mills*, 236 Ga. App. 613, 617 (2) (511 SE2d 904) (1999).

dict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Bradley v. State.*[1]

Viewed in this light, the record shows that, on November 30, 1999, the DeKalb County Police drug hotline received an anonymous telephone call. The female voice on the recording stated that Clemons resided at 6265 Marbut Farm Trail and was dealing in kilogram amounts of cocaine. DeKalb detectives verified that Clemons owned the house at Marbut Farm Trail and began surveillance of the house.

On May 2, 2000, police received information from a jail inmate that Clemons received two deliveries of cocaine per week. The inmate described the drug transactions, relating that the drugs would be exchanged for money by a Hispanic male in a gold Ford automobile. On May 5, 2000, the detectives observed activity at the house similar to that described by the jail inmate. The gold car was stopped after leaving Marbut Farm Trail, a drug dog alerted to the trunk of the car, and upon a search, a large amount of cash was found. The driver of the car, Reynaldo Ortuno, was arrested.

The legality of this stop and the subsequent search of the car is not before us. A search warrant covering Clemons's house was issued by a magistrate based on misinformation provided by the police concerning one of the two informants, the police surveillance, and the stop of the gold car. The officer providing the search warrant affidavit failed to disclose to the magistrate that one of the informants was a jail inmate who was seeking a deal to make bail. Rather, the magistrate was advised simply that the informant was a concerned citizen.

1. Clemons argues that the trial court erred in denying his motion to suppress as there was insufficient evidence to support the issuance of the search warrant covering his house. He asserts that the information provided to the magistrate lacked reliability because it came from an anonymous caller and a jail inmate, rather than a concerned citizen, and that there was inadequate corroboration by police of the facts related by the informants. "In determining whether an affidavit sufficiently establishes the probable cause necessary for issuance of a warrant, we employ the totality of the circumstances analysis enunciated in *Illinois v. Gates*[2] and adopted by the Georgia Supreme Court in *State v. Stephens*.[3]" (Punctuation omitted.) *Davis v. State.*[4]

---

[1] *Bradley v. State*, 252 Ga. App. 293 (556 SE2d 201) (2001).
[2] *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983).
[3] *State v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984).
[4] *Davis v. State*, 214 Ga. App. 36 (447 SE2d 68) (1994).

The jail inmate had advised that shipments of illegal narcotics were delivered to the Marbut Farm Trail address twice each week by a Hispanic male driving a gold Ford car, who would enter the garage, unload the narcotics, and then load money into the Ford. The true status of the jail inmate was not disclosed until cross-examination during the hearing on the motion to suppress. At that time, the affiant detective admitted that the "concerned citizen" was, in fact, a jail inmate who was asking for a favor in having bail set. He further admitted that this inmate had no prior history as an informant for the police. It is the duty of police officers to be honest, open, and forthcoming when providing information upon which a magistrate must act. The veracity of all information provided by the officer is brought into question when misrepresentations are made. Such conduct is to be condemned, as it precludes the magistrate from the performance of his duty. The magistrate might well have denied the search warrant had he been aware of the true facts or of the officer's deception.

The affidavit also stated that on November 30, 1999, an anonymous female telephoned the narcotics office answer line stating that Clemons lived at 6265 Marbut Farm Trail in DeKalb County and that he was dealing in kilos of cocaine from that location. The caller described the location of hidden compartments in the house where drugs were hidden and identified three cars that were involved in this drug activity. During the execution of the warrant, several secret compartments were found, and they contained among other items, 112 grams of methamphetamine, three parcels of cocaine weighing 3,039 grams, and several pistols as the female informant had indicated. We note that the finding of contraband cannot justify an otherwise illegal search. The reliability of an informant must be determined based on a pre-search investigation of information provided by the informant. See, e.g., *Stanford v. State*.[5]

The affidavit further stated that the detective confirmed that Clemons owned the house at Marbut Farm Trail by use of public real estate tax records, and during surveillance, the cars described in the anonymous call were observed numerous times at the residence.

Lastly, the affidavit stated that on May 5, 2000, a Hispanic male driving a gold Ford Contour was observed by police entering the garage at Marbut Farm Trail, and after the car exited the garage about 30 minutes later, it was stopped by a K-9 police officer whose dog alerted to the odor of narcotics at the seam of the trunk. Cash in the amount of $62,000 was found in the trunk. Clemons, who had

---

[5] *Stanford v. State*, 251 Ga. App. 87 (553 SE2d 622) (2001).

driven away from the house in another car, was arrested as was a third co-defendant.

> [T]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In addition, the Georgia Supreme Court has cautioned attesting officers and magistrates to make every effort to see that supporting affidavits reflect the maximum indication of reliability.

(Punctuation omitted.) *Eaton v. State*.[6]

As to the anonymous call received in November 1999, there are no indicia of reliability to the call.

> [V]eracity and basis of knowledge are still major considerations in the probable cause analysis, and this court continues to hold that an affidavit submitted in support of a search warrant must set forth sufficient facts from which the magistrate or judge can independently determine the reliability of both the information and the informant.

(Punctuation omitted.) *Robertson v. State*.[7]

> Accordingly, officers seeking warrants should provide the magistrate with any information they have relevant to a CI's (confidential informant's) reliability or motivation, including criminal records and any payments made; and in some cases, if the information is material and the affiant knowingly or recklessly omits it, suppression of the seized material could result.

(Punctuation omitted.) *Hockman v. State*[8] (physical precedent only).

This Court has recognized the value of information provided by a "concerned citizen." See *Davis*, supra at 37. The police officer here breached his duty to accurately inform the magistrate of the fact that the "concerned citizen" was in fact a jail inmate who was seeking

---

[6] *Eaton v. State*, 210 Ga. App. 273 (1) (435 SE2d 756) (1993).

[7] *Robertson v. State*, 236 Ga. App. 68, 69-70 (510 SE2d 914) (1999).

[8] *Hockman v. State*, 226 Ga. App. 521, 523 (1) (487 SE2d 102) (1997).

bail. We have held, however, that the omission of information does not automatically warrant suppression of evidence. *Brown v. State.*[9] "If any omissions on the part of the officer are offset by independent corroboration of criminal activity, then the magistrate may still have sufficient information to find that probable cause exists." Id. This case does not, however, involve an accidental omission. It involves a knowing misrepresentation to the magistrate. This Court must determine if the search warrant was sufficiently supported.

The detective also states that he corroborated, through surveillance, that cars similar to those described by the anonymous tipster had been seen at the house. Based on the officer's testimony, the facts provided by the jail inmate were predictive of future behavior and were information that would not have been known to the general public, i.e., the events on May 5, 2000, which were corroborated by police observation. See *Robertson*, supra at 70 (corroboration of facts predictive of future behavior); *Edgerton v. State*[10] (corroboration of facts not known to general public). The contraband, found in the car that had just left Clemons's house, supported the reports of drug dealing at the residence.

"Under a totality of the circumstances approach, corroboration . . . supplies an alternative basis for finding probable cause, where there are deficiencies in the showing of the informant's veracity, reliability, or basis of knowledge." (Punctuation omitted.) *Sanders v. State.*[11] We note that trial courts can and should take action where police officers engage in the type of misrepresentation herein involved. The credibility of witnesses is for the trier of fact, rather than this Court. Here, the magistrate was deprived of the truth, and the trial judge took no action on the deception in denying the appellant's motion to suppress. Under the standard applicable here, the trial court did not commit reversible error in its ruling on this issue.

2. Clemons also asserts the trial court erred when it reseated prospective juror nos. 9 and 11 after the State objected to defense counsel's use of all 12 peremptory strikes against white jurors.

In *Georgia v. McCollum*,[12] the United States Supreme Court "[held] that the [equal protection clause] prohibits a criminal defendant from engaging in purposeful discrimination on the [basis] of race in the exercise of peremptory challenges." When a *McCollum* objection is raised, the trial court must engage in a three-step process to determine if peremptory challenges were used in a racially discrimi-

---

[9] *Brown v. State*, 244 Ga. App. 440, 442 (1) (535 SE2d 785) (2000).
[10] *Edgerton v. State*, 237 Ga. App. 786, 788 (516 SE2d 830) (1999).
[11] *Sanders v. State*, 252 Ga. App. 609, 612 (1) (556 SE2d 505) (2001).
[12] *Georgia v. McCollum*, 505 U. S. 42, 59 (112 SC 2348, 120 LE2d 33) (1992).

natory manner. *Chandler v. State*.[13] "[T]he burden of persuading the trial court that the strikes were racially motivated rests with, and never shifts from, the opponent of the strike." *Malone v. State*.[14]

In the first step of the process, the opponent of the strike must make a prima facie showing of racial discrimination. *Chandler*, supra. After the proof of a prima facie case, "the proponent of the strike is required to set forth a race-neutral, case-related, clear and reasonably specific explanation for the exercise of its strikes." *Barnes v. State*.[15]

In the present case, the trial court made a finding of a prima facie case which is not disputed, and, following this finding, Clemons offered the following explanations for his strikes of juror nos. 9 and 11. Defense counsel testified that juror no. 9 was a female meteorologist whose work schedule was of concern since she worked "the 6:00 to 9:00-a.m.-shift," she had poor rapport with counsel, the defendant did not want her on the jury, and she had been a victim of a crime. Defense counsel stated that juror no. 11, also a female, had been a party to a lawsuit and a victim of vandalism.

In the final step of the test outlined by *McCollum*, "[t]he opponent of a strike is not required to submit evidence which proves discriminatory intent [but] may carry its burden of persuasion by reference to the facts and circumstances surrounding the proponent's use of its peremptory strikes." *Daniels v. State*.[16] See also *Blair v. State*.[17] The State may also carry its burden of proof "by showing that similarly situated jurors of another race were not struck or that the proponent's race-neutral reason for a strike is 'so implausible or fantastic that it renders the explanation pretextual.'" *Williams v. State*.[18]

Here, the State testified that: (1) striking juror no. 9 just because the defendant did not want her on the jury was not a racially neutral reason and (2) juror no. 11 appeared to be a potential juror that defense would want because she had complained about an incident in which her son had received rough treatment by a police officer, and was a long-time county resident, which was a reason defense stated for accepting another juror. The court commented that the crimes of which juror no. 11 was a victim were not related to the crimes charged in this case and asked if defense counsel had failed to strike any black prospective jurors who had been crime victims. The State

---

[13] *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996).

[14] *Malone v. State*, 225 Ga. App. 315, 318 (1) (484 SE2d 6) (1997).

[15] *Barnes v. State*, 269 Ga. 345, 349 (6) (496 SE2d 674) (1998).

[16] *Daniels v. State*, 238 Ga. App. 511, 514-515 (1) (b) (519 SE2d 269) (1999).

[17] *Blair v. State*, 267 Ga. 166, 167 (2) (476 SE2d 263) (1996).

[18] *Williams v. State*, 253 Ga. App. 458, 466 (8) (559 SE2d 516) (2002).

testified that two African-American victims of crime had been seated by the defense.

After the State's explanations, in the present case, the trial court found that the offered race-neutral explanations for juror nos. 9 and 11 were so implausible or fantastic that the explanations were pretextual. It is well established that a trial judge, who has the opportunity to evaluate the demeanor and credibility of the proponent of a strike, may choose to disbelieve implausible or fantastic justifications for a strike during step three of the analysis. See, e.g., *Jackson v. State*;[19] *McKenzie v. State*.[20] Moreover, "[a] trial court's findings on whether the opponent of the strike has met his burden of persuasion [are] entitled to great deference and will be affirmed unless clearly erroneous." *Williams*, supra. Given this deferential standard of review, the trial court did not err in its ruling on this issue.

3. Clemons also asserts that it was error for the trial court to deny his motion for mistrial based on the admission in this criminal trial of civil forfeiture proceeding pleadings related to the property seized at his house on May 5, 2000. During the testimony of one of the detectives, the State tendered certified copies of the forfeiture complaint and Clemons's answer which had been signed and verified by him. Clemons objected to the admission of these pleadings on the basis of relevancy, but the court admitted these documents over this objection.[21] Thereafter, the detective testified that, in his answer, Clemons claimed the house, cars, money, and everything that had been seized from the house. He also stated that Clemons had denied the drugs seized were contraband and made a claim for them.

Two days later, near the end of the State's case, Clemons made a motion for a mistrial based on his objection to the admission of the civil forfeiture documents, stating that the documents were not relevant unless Clemons testified and waived his right to self-incrimination. Clemons had not testified during the trial. The trial court denied defense counsel's motion for a mistrial. Defense counsel then asked the court to exclude the documents from the jury's consideration. Upon inquiry from the court, the State chose to withdraw the exhibits so that they did not go to the jury room. Thereafter, Clemons renewed his motion for mistrial, which was again denied by the trial court. The trial court offered to provide an instruction to the jury that "evidence of some civil proceeding was introduced but it's not going out with them because it's not admissible." Defense counsel

[19] *Jackson v. State*, 265 Ga. 897, 899 (2) (463 SE2d 699) (1995).
[20] *McKenzie v. State*, 227 Ga. App. 778, 779 (1) (490 SE2d 522) (1997).
[21] Nothing in the record indicates that Clemons took any action to stay the civil action until the criminal case was resolved.

asked the court to instruct the jury that "the issue of the entire civil litigation is not to be considered," instead. The State did not agree, so no instruction about the civil exhibits was given.

Clemons is barred from claiming the trial court erred in admitting the forfeiture pleadings. "No motion for mistrial was made at the time of objection. A motion for mistrial not made at the time the testimony objected to is given is not timely and will be considered as waived because of the delay in making it." (Punctuation omitted.) *Nel v. State.*[22]

Furthermore, "[i]n order to raise on appeal contentions concerning admissibility of evidence the specific ground of objection must be made at the time the evidence is offered, and a failure to do so will be considered as a waiver. All evidence is admitted as a matter of course unless a valid ground of objection is interposed." *Caldwell v. State.*[23] Clemons, in his original motion, raised only a relevancy objection and did not claim that admission of the forfeiture pleadings violated his right against self-incrimination. To do so more than two days later is not timely.

Assuming that Clemons had made his objection timely, the trial court has a wide discretion in determining what evidence is relevant and material. *Mosier v. State.*[24] In *Chester v. State,*[25] this Court upheld, over an objection for relevancy, the admission into evidence of a civil forfeiture complaint and answer for the purpose of proving ownership of the house in which a large sum of money was seized. This Court held, "[w]e have found no case holding that it is error to admit civil pleadings in a criminal action especially when the subject matter of that civil action is the same as was the case here." Id. at 14. Furthermore, Clemons was not compelled to sacrifice his Fifth Amendment right to answer the forfeiture petition since he could have sought a stay by asserting that right under the forfeiture statute.[26] See *Jett v. State of Ga.*[27] (Beasley, J., concurring specially). Hence, this is not an instance in which a defendant is compelled to sacrifice one constitutional right for another, as was disapproved in *Simmons v. United States*[28] and *Culpepper v. State.*[29] In those two cases, the defendant was required to acknowledge ownership in prop-

---

[22] *Nel v. State*, 252 Ga. App. 761, 763 (3) (557 SE2d 44) (2001).

[23] *Caldwell v. State*, 247 Ga. App. 191, 198 (3) (542 SE2d 564) (2000).

[24] *Mosier v. State*, 218 Ga. App. 586 (1), 589 (3) (462 SE2d 643) (1995).

[25] *Chester v. State*, 162 Ga. App. 10, 13 (7) (290 SE2d 117) (1982).

[26] OCGA § 16-13-49 (w) provides: "For good cause shown, the court may stay civil forfeiture proceedings during the criminal trial resulting from a related indictment or information alleging a violation of this article."

[27] *Jett v. State of Ga.*, 230 Ga. App. 655, 658 (498 SE2d 274) (1998).

[28] *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968).

[29] *Culpepper v. State*, 132 Ga. App. 733 (209 SE2d 18) (1974).

erty in order to have standing to seek a motion to suppress the evidence, and then those motion pleadings were used to prove guilt of the crime at trial. To admit the motion pleadings would have compelled the defendant to choose between his right under the Fourth Amendment of freedom from unreasonable searches versus his Fifth Amendment right against self-incrimination.

Moreover, similar to the circumstances in *Chester*, supra, the court found that the forfeiture pleadings were cumulative of other evidence of ownership by the defendant. In the present case, the deed to Clemons's house and the bill of sale of his BMW were also admitted into evidence as proof of ownership. As to the items seized inside the house, "[i]n the absence of any circumstances to the contrary, a presumption arises from proof of ownership and control of premises, an automobile, or other property that the owner is in control and possession of contraband found therein." (Punctuation omitted.) *Owens v. State*.[30]

For the reasons stated above, we find no reversible error in the trial court's ruling on this issue.

4. Clemons argues that it was error for the trial court to fail to declare a mistrial when the jury heard portions of a co-defendant's videotaped statement that referred to criminal events which occurred prior to May 5, 2000.

Upon Clemons's motion in limine, the State agreed to restrict any testimony from Ortuno, a co-defendant, about bringing drugs to Clemons's house on occasions other than May 5, 2000. As the State's witness, the co-defendant testified that he had delivered cocaine to the Marbut Farm Trail location, that he had been there before, had not seen Clemons before, but that Clemons arrived at the house on May 5, 2000, while the co-defendant was there. Thereafter, he provided testimony that conflicted with his previous statement to the police concerning Clemons. The detective who interviewed the co-defendant testified as to the inconsistencies between Ortuno's testimony at trial and his videotaped statement on the day of his arrest. Thereafter, the videotape was admitted into evidence over Clemons's objection that it might contain evidence of other drug transactions although it was not played. During deliberations, the jury asked to hear the tape of the co-defendant's interview. The following portion of the tape which is in contention was translated by an interpreter to the jury, since the original interview was conducted in Spanish.

Detective: Okay. We want to know a little bit more how many times — all right. You already told us that you were

---

[30] *Owens v. State*, 202 Ga. App. 785, 786 (2) (415 SE2d 704) (1992).

carrying about two or three — okay. How many times have you gone to this place?

Co-defendant: One time and another time with Ramon.

Detective: When you went with Ramon, do you know how much you took? Do you know how much you took? Okay. Have you been to other places to take packages?

Co-defendant: No.

Detective: When you went with him, how much did he pay you to take the package?

Co-defendant: About $700.

Detective: And this time a thousand dollars and you carried — . . . This time you took three kilos?

After the last question, the prosecutor, outside the presence of the jury, stated that he had instructed all witnesses including the interpreters not to mention transactions prior to May 5, 2000. The prosecutor suggested the trial court strike the above portion, which the jury had heard, and give curative instructions. Clemons moved for a mistrial based on the fact that the tape refers to prior criminal activity. The trial court denied this motion and Clemons's request for a reading of the co-defendant's full testimony and gave no curative instruction. The court then instructed the prosecutor to stop the tape if it looked like there was even "the vaguest possibility of going back into" the earlier testimony, and the remainder of the tape was played without any other references to other drug transactions.

It is generally within the discretion of the trial judge to determine whether to grant a mistrial based on improper character evidence. " 'In reviewing the trial court's decision, an appellate court may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety.' " *Smith v. State*.[31] "A trial court's discretion in granting or refusing to grant a mistrial should not be disturbed unless a mistrial is essential to the preservation of the right to a fair trial." *Gardner v. State*.[32]

The trial court did not abuse its discretion in this case for a number of reasons. First, due to the somewhat random nature of the questioning, the offending portion of Ortuno's interview is manifestly unintelligible. Second, even if the jury could decipher the roundabout questions and answers, the relevant excerpt does not specifically refer to any previous drug activity by Clemons. Third, even if we were to assume that introduction of this excerpt was erroneous, the

[31] *Smith v. State*, 235 Ga. App. 134, 138 (3) (508 SE2d 490) (1998).
[32] *Gardner v. State*, 273 Ga. 809, 812 (5) (546 SE2d 490) (2001).

error was harmless due to the overwhelming evidence of Clemons's guilt. See, e.g., *Weems v. State.*[33]

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED AUGUST 20, 2002 —

*Daniel B. Kane*, for appellant.

Kelvin Clemons, *pro se.*

*J. Tom Morgan*, District Attorney, *Robert M. Coker, Benjamin M. First*, Assistant District Attorneys, for appellee.

---

[33] *Weems v. State*, 269 Ga. 577, 579 (3) (501 SE2d 806) (1998).

